Good morning, Your Honors. Paul Hoffman. I'd like to focus on the main claims in the case, which have to do with the falsification and misuse of evidence to create the wrongful accusation. And I want to emphasize because the U.S. in its brief has mischaracterized our claims that the claim is that defendants Castillo and McDowell falsely informed the service that the murder of the defendants was not a crime. The Mirmehdis were connected to the MEK, which is a group that is opposed to the current regime in Iran, and that there was new evidence to that effect in the form of a one-page, what they call the cell form, which indicated their membership or support for the MEK. Is there any reason that Castillo and McDowell should have known that it was false? Yes. And what is the reason? Lots of reasons. The main reason is that this was one page from a document that they found in a search of what they've called an MEK safe house in February 2001. It was one of approximately 60 to 100 pages. There are somewhere between 600 to 900 names on these pages. The plaintiffs' names were found on one of the pages. It is obvious from the document that it is a list of people who went to a lawful rally on June 20, 1997, in Colorado. It has flight details. It has everything that you would have for people organizing a lawful rally. And when I say lawful rally, in June of 1997, our government supported the MEK. They were not labeled as a terrorist organization. They were supporting U.S. policy, which was against the current regime in Iran. It was only after, in October of 1997, that the MEK received the designation that it did. So two of the plaintiffs, not even all four of them, went to this rally in Colorado because they are opposed to the current regime in Iran as our government is and as most people around the world are. One of the plaintiffs was, in fact, detained for three years and tortured by this regime from 1981 to 1984. So they have independent reasons from any affiliation with anybody for their distaste for the current regime in Iran. Okay. But keep your eye on the ball. Why doesn't qualified immunity protect these two agents from this one piece of paper? in detention because of this document. Now, the other point in the document is that these agents had investigated the MEK for years, for years. And everything they had found out in connection with the plaintiffs were not any justification for taking away their bond. The plaintiffs had been given bond, three of them, for two years, one of them for a year prior to the time their bond was revoked. They had come to every hearing. There was no evidence they were a danger to the community or anybody else. And this included, there was all sorts of evidence that came out of the investigation of their immigration attorney, which came up in these hearings, but none of that was deemed as relevant to put them in prison. The other thing is that the government, these agents, seized 175 boxes from this MEK safe house. The only page that has anything to do with the plaintiffs is this one page out of 175 boxes. In addition to that, there's more I could go on. No, I think that's enough. I want to change the subject for just a little bit. What we have here is a Bivens claim brought by a noncitizen or noncitizens with respect to an immigration matter. Is there any case out there that holds that a Bivens action can be brought under those facts? Well, there are definitely cases, and I believe we cited them, on behalf of noncitizens against INS agents. I forget what page we cited in our brief. There are a number of cases where that's the case, where the Bivens actions have been done. Most of them have to do with things like excessive force. I think there's a shooting case. There are a number of cases. But there's no question that Bivens claims have been brought against INS officials. We believe that the Harris v. Rodrick case in this circuit is controlling on these issues in the sense that it identifies a Bivens cause of action for the fabrication of evidence that led, in that particular case, that's the Ruby Ridge case, that led to the arrest of the plaintiff, the shooting of the plaintiff, and then the wrongful prosecution of the plaintiff. And in addition to it standing for the proposition that there's a Bivens claim of exactly the kind that we've alleged in our complaint, it also deals with the question of whether there's a testimonial privilege under BRSCO in these circumstances. Because what the government has argued is that our claim is based on what Defendant Castillo said in the December 10th bond hearing. First of all, it is not. It is based on the initial false statement that led their bond to be revoked. And that is what led to everything else that happened, and that happened long before any testimonial privilege. But what happened in Ruby Ridge and what happened here is that the lies were perpetrated and, in fact, embellished upon, in our case, embellished upon in December 10th testimony before in a bond hearing by Defendant Castillo. In the Ruby Ridge case, there was testimony before a grand jury and testimony before a jury at trial. And what this Court said in Roderick was the simple fact that once you start this lie that sets in motion this chain of events, the fact that you testify about it later in a testimonial situation does not prevent liability. It doesn't end causation. You are still responsible for setting in motion, and you can be responsible for your false testimony in those contexts. And the distinction between that kind of situation and the cases that deal with testimonial privilege in the BRSCO side of things is that in BRSCO you're talking about witnesses that are not complaining witnesses. And the difference in we have a dispute in the briefs about what are complaining witnesses and about the difference between Roderick and the Cruz case. What Roderick said was that there are two different kinds of complaining witness-type cases. One of them is the Cruz kind of case where there's an ex parte application and a search warrant or an arrest warrant, and there the officers can be found liable under the Malley line of cases for falsification of information that leads to the arrest warrant. And the other one is the Malley line of cases where there's an ex parte application and a search warrant, and there the officers can be found liable under the Malley line of cases for falsification of information that leads to the arrest or search. And the other one is the Malley line of cases where there's an ex parte application and a search warrant, and there the officers can be found liable under the Malley line of cases for falsification of information that leads to the arrest or search warrant. And the other one is when they're bringing, trying to bring a claim from outside the United States. You mentioned Harris v. Rogers, but that's the Ruby Ridge case. Right, right. Harris v. Rogers. That's not a, that person was a citizen for sure. I mean, O'Rourke v. Ashcraft, for example, is a case where there was a Bivens claim that was, it was rejected, but not on the grounds that it was a Bivens claim. O'Rourke was the, was the extraordinary rendition case that the Second Circuit decided on Bonk. O'Rourke was not a citizen. That would, there's not a bar for him bringing a Bivens type action. And this is the kind of Bivens action that Harris provides for in terms of the kind of claim that it is. It's the core kind of Bivens claim, which is. I don't know that O'Rourke goes that far. It noted that in the 38 years since Bivens, the Supreme Court has extended it only twice. Once in the context of employment discrimination, and second in the context of an eighth amendment violation. And then it goes on to list all of the claims for Bivens rights that have been denied. Right. Well, there's no question, there's no, there's Bivens, there's Davis v. Passman, and there's Carlson v. Green at the Supreme Court level. At the lower court level, there hasn't been any retreat from the Bivens, from traditional Bivens claims. Harris v. Ryberg is a traditional Bivens kind of claim. It's a fourth amendment claim for the, you know, for those kind of violations. And the Supreme Court has basically said, Bivens, Davis, and Carlson are still good law, and we're not going to extend it into some other areas. But we're not asking for that extension. And there's no case that says that the immigration context prevents you from having a Bivens claim of this, of the sort that we're talking about in terms of government misconduct of this kind. Counsel, you're down to four and a half minutes. I am down to four and a half minutes. And so in terms of the complaining witness, I think that the definition of complaining witness is somebody who has a role in instigating the prosecution. The common law differentiation was between defamation and malicious prosecution. All the cases say that, cases around the country that find a complaining witness exception would apply it here, so that even defendant Castillo's testimony on December 10th, which is also false, would fall within that. And on the Federal Tort Claims Act, the argument about falsification of evidence also undermines any of the state law immunities that might be applicable, at least from a pleading standpoint. And I think it's important to emphasize before I sit down that we're talking about pleadings at this point, and pleadings in a First Amendment complaint, and also pleadings that dealt with a whole range of other issues and a whole range of other defendants. So if the case is sent down, we would amend our complaint to add more specifics about McDowell and Castillo and lay out the claims against them in particular, as opposed to the larger group of defendants where we haven't either appealed or we've settled the case or things have changed. But let me retain the rest of my time if I may. Thank you, counsel. We'll hear from the government. May it please the Court. My name is Andrew Silverman. I represent FBI Special Agent Chris Castillo, ICE Special Agent James McDowell, and the United States. The District Court correctly dismissed the suit against my clients, and this Court should affirm for three main reasons.   First is that plaintiffs premise their detention claims on the wrong legal standard. An alien's bond can be revoked if there is any basis in fact tending to establish that the alien is either a flight risk or a danger to the community. Here, ample proof supported the revocation of plaintiff's bond. In fact, six judges have reviewed the evidence and concluded that plaintiff's bond should have been revoked. In light of those decisions, the defendants are entitled to at least qualified immunity because it cannot be said that all reasonable officers would have known that plaintiff's bond should not have been revoked under the circumstances. Second, plaintiff's witness intimidation claim fails because their claim is essentially that Tabatabai was precluded from testifying in a proceeding where he had already testified about issues for which he had already testified. Given that a witness intimidation claim requires prejudice, plaintiffs have not established and cannot establish that there was any intimidation or that there was any prejudice from the alleged intimidation. Third, the defendants are entitled otherwise to immunity. First, with regard to Castillo, his testimony in an adversarial bond proceeding where he was subject to cross-examination and testified under oath is entitled to immunity under Briscoe v. LaHue. With regard to Agent McDowell, the complaint contains no allegations indicating that he was in any way involved in the revocation of plaintiff's bond. With regard to plaintiff's detention claims under the Fourth and Fifth Amendment, those claims fail largely because there were various pieces of untainted and uncontroverted evidence from a variety of sources relied on by the I.J. and the BIA which led those judges to conclude that there was ample evidence to support revocation of plaintiff's bond. Scalia. Why don't you talk about the threshold question that we were discussing with Mr. Hoffman? In other words, where does this fit in in the Bivens jurisprudence? Is this a typical Bivens case or not? No, Your Honor. I don't think it is a typical Bivens case. This case involves a claim for arrest and detention where plaintiffs were able to challenge those decisions before the I.J., before the BIA, and then in habeas before a magistrate judge, a district court judge, and ultimately before this court. In addition, in the immigration context, and it's important to remember that we're in the immigration context, Congress has been unequivocal that in attempting to limit the role of Article III courts in those sorts of proceedings, 1252A2D2 indicates that this court does not have jurisdiction, or federal courts do not have jurisdiction over discretionary acts by the Attorney General. 1226E indicates that revocation of bond is a discretionary act, and 1226E says that this court does not have jurisdiction over decisions related to bond revocation. In light of Congress's clear directives to the courts regarding whether or not courts should get involved in these sort of cases, this is not the typical case. Thirdly, with regard to whether or not there's a cause of action, the Supreme Court has recognized that immigration matters are different, both because of Congress and the executive branch's plenary authority over immigration, and because of the implication that immigration policy can have on foreign policy. Mr. Hoffman spoke about the MEK being an organization opposed to the current government of Iran. The way that the United States chooses to treat or investigate or go after members of an organization that are opposed to the current government of another country have profound foreign policy implications, and it's for that reason, coupled with the really tremendous amount of review that the plaintiffs were able to have over these claims, that this Court should not infer a Bivens remedy until Congress acts first to invite courts into this area. What would our precise holding be? Would you have us hold that no alien can ever bring a Bivens action? No, Your Honor. I don't think that the holding What exactly would you have us hold? The holding on this argument would be that there are, there is an alternative existing process for the plaintiffs to protect their rights, and that includes review before the IJ, the BIA, and in habeas cases. The holding would be very narrow in this case. The plaintiffs had a habeas proceeding, even though a year after, or two years after they filed their habeas proceeding, Congress enacted the Real ID Act, and that arguably removed habeas jurisdiction from court. So the holding in this case could be incredibly narrow in that it's unclear that the law is currently the same as it was in 2001 when the plaintiff's bond was revoked, and it may be that only aliens that had the ability to get in front of an Article III court for habeas reasons would actually be precluded from bringing a Bivens claim. The holding would also be very narrow because as opposed to You would have us hold no alien may bring a Bivens action if he is in immigration proceedings and has an administrative remedy. Is that the holding you would have us hold? That would be part of it, Your Honor. I think What would the rest of it be? It depends on what the sort of claim for relief is. Mr. Hoffman spoke of excessive force claims. In this case, there was also challenges to the conditions of confinement. Those are issues that I think are outside the immigration context. So the holding would be limited to the sorts of claims that the administrative and judicial process under the INA and immigration laws would be able to address. Would it be sort of like a HECT kind of analysis where we wouldn't allow civil damage actions that would contradict the immigration proceedings, that sort of thing? Well, HECT relies on whether or not the plaintiff in that case prevailed in their proceedings. And here I don't think that whether or not the plaintiff has prevailed or failed in those immigration proceedings matters. As this Court explained in Western Radio Services and sort of this Court's progeny since Bush v. Lucas and Schweiker v. Chalicki, it's the comprehensiveness of the scheme and whether or not, as Wilkie says, there is an alternative existing process for a plaintiff to vindicate their rights, not whether or not they've actually prevailed in that process. And Berry v. Hollander is a case in this circuit where the Court said even though a plaintiff may not have any remedy whatsoever, much less actually being able to prevail on that in that proceeding, there still would not be a Bivens remedy if the proceedings or if the scheme was comprehensive enough. And that's, I think, where this Court should rest its holding with regard to the special factors and existence of a Bivens remedy analysis, that the plaintiffs had an alternative existing process to vindicate these rights. Had they prevailed before the IJ or the BIA or in their habeas proceedings, they would have been let out of detention. They, however, did not prevail in any of those proceedings and their detention continued until they had a final order of removal. With regard to the claims themselves, separate from the issue of whether or not there is a Bivens remedy, the Fourth and Fifth Amendment claims with regard to detention fail primarily because there was evidence that supported plaintiff's bond revocation. That evidence included a statement from a confidential informant to the government stating that the plaintiffs were members of MEK. There were letters that were recovered from Mohammed, one of the plaintiffs, to a known member of MEK. There were audio tapes and transcripts of conversations with plaintiff's asylum attorney, Tabatabai, who indicated that plaintiffs were connected to the MEK. The cell list, which has been talked about to some degree already, was found in an MEK safe house, and that cell list contained the names of at least 60 people who were arrested for their connection to the MEK. Two of the plaintiffs were present at a rally where most of the people there at that rally were supporters of MEK. At least one of the plaintiffs was found, at least one of the plaintiffs was observed at an MEK safe house, and the IJ concluded that separate from all of the business regarding MEK, three of the four plaintiffs admitted to engaging in immigration fraud. This circuit found that the fourth plaintiff who did not admit to immigration fraud had clearly engaged in immigration fraud, and the court found, the IJ found, that given that, the plaintiffs were clearly a flight risk. With regard to the so-called manipulation of evidence or fabrication of evidence, that claim simply does not stand up in light of the administrative record before this Court. In the plaintiff's IJ bond decision, the IJ made clear that the cell list was one page of 60. It's simply not accurate to say that the cell list was one page that was ripped out of 60, that the plaintiffs weren't presented the rest of that evidence. It's clear from the administrative proceeding that that's simply not the case. Similarly ---- Sotomayor, so what is the case? I didn't quite follow that. The plaintiff's argument is that the cell list was fabricated or manipulated in that it was really a 60-page document, but it was presented to the IJ as being only one page, and that one page having the Mermady's names on it. In fact, the IJ's opinion makes clear that the IJ was aware of all 60 of those pages. In addition, it's important ---- Was the document presented to the IJ, or was it just a summary by the officers? The one page was certainly presented to the IJ. I'm not sure if the remaining pages were presented or not, or if the IJ was just made aware of those. In the transcript that's attached to the briefing here, it's clear that the plaintiffs had asked to be able to see the document and were given that basis. But it's important to remember that this is a Bivens case, and we're talking about Agent Castillo and Agent McDowell. And if it was determined for privilege reasons or for national security reasons that only one page would have been shown to the plaintiff rather than all 60, and they were just made aware of the other pages, that certainly isn't the fault of Agents Castillo or McDowell. Similarly, the plaintiff's complaint that the cell list was mistranslated is certainly something that can't be tied to Agents Castillo or McDowell. They weren't the ones who translated the cell list. And so it's important to keep in mind that this is a Bivens case. And what's at issue with regard to the Bivens claims is whether or not these individuals were personally involved. The plaintiffs argued in their speech that this case is really about statements that were made from Agents Castillo and McDowell to the district director or to the service in general. That simply is just not what the complaint talks about. There's only two paragraphs in the complaint that talk about what happened before plaintiff's bond revocation. The first is paragraph 71. And in that paragraph, the complaint simply alleges in conclusory fashion that the federal investigative and policy defendants, which included Castillo and McDowell, revoked plaintiff's bond. That's simply not the case. Under ACFR 236.1c9, the Castillo and McDowell had no authority to revoke plaintiff's bond. That was limited to high-level officials within INS at the time and later ICE. Second, paragraph 96 of the complaint says that during the 9-11 attacks, Castillo found out about the cell list, finally had a translation of the cell list, and that he took that document and sent it along to the INS to be examined and for a determination to be made. The complaint then says, using passive voice, that plaintiff's bond was revoked. Agent Castillo is alleged to have done nothing more than simply take the cell list and pass it on to his superiors. Certainly, that doesn't constitute false statements or fabricated evidence. All that it is is plaintiff's argument that they disagree with the interpretation that the INS came to with regard to the cell list. What exactly? You keep calling it a cell list. He calls it a travel log or something. What is this exactly, without characterizing it as a cell list or something else? What is it? It's a document one page out of 60 or so. At least that's what the IJ said. Is it in the middle? Is it the back? I mean, where does it fit in the 60 pages? I don't know the answer to that question, Your Honor. What I know is that it's a document that has several names on it. It includes a bunch of columns. Mr. Hoffman is correct that some of the columns include travel information, but it also includes a column that states that the plaintiffs were in prison at the time that the cell list was created. And if it's true that the cell list is a document that was created regarding travel in 1997, the plaintiffs were not detained until 1999. So it's not possible that the plaintiff's interpretation that this is merely a travel log is correct. And as the habeas judge, Magistrate Judge Walsh explained, there are differing opinions, differing interpretations as to what the cell list may or may not be. The plaintiffs had an opportunity to present their arguments. The IJ considered testimony and ultimately decided against them on those. Does the 60 pages have a title? Yes. At the top, there is a word which the FBI has translated into cell. I believe that the plaintiff's translator said that the word means network. And that, again, is part of the dispute. Is that all it says, one word in the front page? That's what it says at the top of this page. I'm not sure if it says that on other pages. I mean, is there something that gives you a sense of what the 60 pages purports to be? Is it just a bunch of random pieces of paper, or is it a document that has some integrity to it? I think that they are numerous pieces of paper that look similar to this paper that have the plaintiff's names or have the names of different people as well as information about their conditions and things of that nature. It could very well be a list of people who attended a rally, such as what we've heard. It is possible that it could be that, Your Honor. However, like I said, because the cell list mentions that the plaintiffs were in prison, that seems unlikely because they were not detained until two years after the fact. Be it as that may, though, this is a case where the defendants have raised an entitlement to qualified immunity. And that there are various interpretations of what the cell list means, but ultimately the IJ and the BIA reached one conclusion, is not a case in which qualified immunity should be denied. If I could spend just a moment, and that's all I have left, on the absolute immunity claim, the witness immunity claim. The plaintiffs rely very heavily on out-of-circuit authority for this claim. And it's important to look at the authorities within this circuit, which define a complaining witness as one who testifies in an ex parte proceeding. Here, Agent Castillo testified in an adversarial proceeding subject to cross-examination under oath, where plaintiffs were able to present rebuttal evidence. And Cruz makes clear that in that circumstance, we're not speaking of a complaining witness, but rather as a witness who's entitled to immunity under Briscoe. Thank you. Roberts. Thank you, counsel. Mr. Hoffman, you have some reserve time. Thank you, Your Honor. First of all, the citations on Bivens and non-citizens are on page 7, footnote 2 of our reply brief. And I apologize, since one of the cases is one of my cases, Papa v. INS. I probably should have been quicker on that. With respect to, there are a lot of different issues, obviously, that have been raised. One of those cases cited will answer the question you asked. Pardon me? I said one of the cases cited was one I argued, so I suspect I should have known that. I don't want the narrow holding that counsel proposes that an alien shouldn't be allowed to bring a Bivens action as long as he has a reasonable administrative opportunity. Well, first of all, that certainly isn't the test in terms of the Bivens line of cases. I mean, I think that the administrative, the plaintiffs were part of administrative proceedings. I mean, they went through asylum. They went through withholding. They went through removal. Those aren't challenged. We didn't challenge them then. We don't challenge them now. They were out on bail. This is all about detention. But he's gotten all the, all he's entitled to. No. He was, they were detained for 41 months for no reason. Well, you're not guaranteed to win, but, you know, that's. No, no. But our case is about the detention, is that they were put in jail for 41 months even though they have no connection to this organization. There's no evidence. There's no evidence. Did you bring a habeas? Yes, there was a habeas. But here's the point. The defendants created this lie. The BIA decisions that are attached show exactly what happened. They went to the INS and said, you should arrest these people. They were arrested on October 2nd, long before any testimony in court, based on what Castillo and McDowell said about this document, which was totally false and against everything they knew about these people and about their investigation. That's the gist of our case. And after that, all of the standards of review in that process are all very deferential. They're all deferential to the district director because, as counsel has said, the way this is set up is that once the district director makes a decision, it's very hard to overturn it. Judge Walsh, in his report and recommendation, said, look, I'm bound by abusive discretion, and there's no abusive discretion. And he's basing it on the very testimony that we're saying is a lie, which infected all of the other proceedings, which is exactly the Harris v. Roderick situation, a situation where the lie determines the course of the proceedings. And that's the gist of our claim. That is a Bivens claim, and it's not wiped out by anything, and it's not affected by all these other processes. They're not claiming that any of those processes erased Judicata or collateral stop on the claim. They've mentioned jurisdiction, but they're not claiming that this Court doesn't have any jurisdiction. They didn't claim it below. They don't claim it now. So there's no question that aliens can bring these kinds of claims. This is a Bivens claim. It's not wiped out by anything else. It shouldn't be wiped out by anything else because what the defendants did in this case undermines that entire system. It undermines the immigration system. I just want to make sure I'm clear. What they did, the lie from which everything else evolves, is they went to a safe house for this organization, an MEK safe house, found documents. One of the documents you characterize as one thing, they characterize as something else, but lists these people, and they showed it to the judge, and the judge ---- But it's more than that, though. What they said, this is a ---- this thing shows that they're members. They knew they were members. How did they know that? They knew that. Look, there's no evidence that any of the plaintiffs ever went to a single MEK meeting, ever made a donation to the MEK, ever supported the MEK in any way, never did a task for the MEK. In the safe house that they surveilled for four years, none of them showed up at that safe house. The 71 people arrested, none of them had anything to do with the plaintiffs. There is absolutely no evidence that they had by that point. And a lot of the evidence ---- Except that their name is on this paper in this house. Their name is on a paper, which is one of ---- a piece of paper, when if you put it together with the 100 pages of 900 people, perhaps, that went to a lawful rally on June 20, 1997, which is the date that's on the document. What does the prison column have to do with it? Somebody, at some point in handwriting, put down the word prison, and no one knows why, and no one knows who, and no one knows anything about that. Certainly, Defendant Castillo didn't know anything about it. What they did is they caused them to be detained for 41 months by having the district director take away their bond, even though there was absolutely no reason to believe there were a danger or a flight risk. There's just no reason to believe that. They're real estate agents, three of them. They were real estate agents before. They're real estate agents now. They have never got into trouble with the law. And what they did to these people was put them in jail for 41 months because these agents took this one page out of context and told the judge, told the district director that they were members when they had no basis for doing that. And that's our claim, and that's the pleadings. He's trying to try the case.  Thank you, counsel. We understand your argument. Your time has expired. The case just argued will be submitted for decision. And the last case for oral argument this morning is
judges: Alarcon, O'scannlain, Silverman